# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

GELPRIME USA LLC,

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; AND THE UNITED STATES OF AMERICA,

Defendants.

No. 26-03882

## COMPLAINT

Plaintiff, Gelprime USA LLC ("Plaintiff"), for its complaint against defendants U.S. Customs and Border Protection ("CBP"), Rodney Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection (the "Commissioner"), and the United States of America ("United States") (collectively, "Defendants"), alleges as follows:

1. This action seeks to enforce the Supreme Court's determination that the new and substantial tariffs on goods imported from nearly every foreign country that President Trump had imposed pursuant to the International Emergency Economic Power Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. were unlawful. Despite the Supreme Court's conclusion that the President had acted outside his authority, the President and Defendants have refused to refund certain of those duties ("IEEPA Duties") unlawfully collected from Plaintiff.

2. Beginning in February 2025, through a series of executive orders, the President invoked IEEPA as authority to impose new and substantial tariffs on goods imported from

nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff has paid these duties on its imported goods.

3. "[T]he terms of IEEPA do not authorize tariffs." *Learning Res., Inc. v. Trump*, 146 S.Ct. 628 (2026).

4. Plaintiff therefore seeks refunds of all unrefunded IEEPA Duties that it deposited with CBP or were assessed by CBP via liquidation.

5. Plaintiff also seeks a declaratory judgment enjoining the future collection of IEEPA Duties from Plaintiff by any means.

## PARTIES

6. Plaintiff is an importer of record into the United States of certain products and paid IEEPA Duties incident to importation. Plaintiff was, therefore, a "person adversely affected or aggrieved by agency action" within the meaning of 5 U.S.C. § 702 and 28 U.S.C. § 2631(i).

7. Defendant CBP is a component of the U.S. Department of Homeland Security and is responsible for collecting IEEPA Duties at the border.

8. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

9. Defendant United States of America received the duties paid by Plaintiff pursuant to the IEEPA tariffs and is a statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

## JURISDICTION

10. The Court possesses exclusive subject matter jurisdiction to entertain this action pursuant to 28 U.S.C. § 1581(i). *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1329 (Fed. Cir. 2025) (*en banc*) *aff'd Learning Res.*, No. 24-1287 at 5.

11. This action is timely because all claims have accrued within the last two years. 28 U.S.C. § 2636(i).

12. Plaintiff has standing to bring this action because it was the importer of record for goods imported into the United States from countries subject to IEEPA Duties. As a result of CBP's application of the executive orders challenged in this lawsuit, Plaintiff has paid IEEPA Duties to the United States and thus suffered injury caused by those orders. A declaratory judgment from this Court or an award of money damages pursuant to 28 U.S.C. § 2643(a)(1) would redress those injuries.

13. The Court possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585. The Court may enter a money judgment for or against the United States in any civil action commenced under 28 U.S.C. § 1581 or 28 U.S.C. § 1582 and may also order any other form of relief that is appropriate in a civil action, including but not limited to declaratory judgments, orders of remand, injunctions, and writs of *mandamus* and prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

## BACKGROUND

14. Pursuant to a series of Executive Orders issued by the President, beginning on February 1, 2025, CBP began collecting IEEPA Duties.

15. First, on February 1, 2025, purporting that the United States faced a national emergency from fentanyl abuse, President Trump issued three executive orders imposing additional duties on imports from Canada, Mexico, and China. Collectively, these are called the "Trafficking Tariffs."

16. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117 (Feb. 7, 2025), *Imposing Duties To Address the Situation at Our Southern Border*

("Mexico Order"), imposed an additional 25 percent tariff on imports from Mexico, premised upon a "grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States." *Id*.

17. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113 (Feb. 7, 2025), *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Order"), declared an emergency because of alleged opioid trafficking via Canada, and also imposed a 25 percent tariff, with certain exceptions.

18. Lastly, the executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9,121 (Feb. 7, 2025), *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Order"), also declared an emergency because of opioid trafficking, declaring that the "sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." *Id*.

19. The China Order imposed an additional 10 percent *ad valorem* duty on products from China imported into the United States in addition to all existing duties.

20. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025) ("February 5 Amendment") and then, again, next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025), *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment"). The March 3 Amendment raised the incremental

tariffs on imports from China to 20 percent and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

21. On April 2, 2025, contending that trade in goods deficits with certain trading partners qualified as their own national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*. The Reciprocal Tariff Order imposed a 10 percent baseline duty on nearly all imports to the United States, effective April 5, and additional "reciprocal" duties on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific rates range from 11 to 50 percent. *Id*.

22. The President issued additional executive orders modifying or deferring the application of earlier orders. The President repeatedly amended the China-specific Reciprocal Tariff rate: he first increased the China-specific rate from 34 to 84 percent effective April 8, 2025, Executive Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509, 15,509 (Apr. 8, 2025), and then from 84 to 125 percent effective April 10, 2025, *Executive Order No. 14266*, 90 Fed. Reg. 15,626 (Apr. 15, 2025). The government modified the Harmonized Tariff Schedule of the United States ("HTSUS") to reflect the higher rates. *Executive Order No. 14259*, 90 Fed. Reg. at 15,509; *Executive Order No. 14266*, 90 Fed. Reg. at 15,626. Following discussions with Chinese officials, the President lowered the China-specific Reciprocal Tariff rate to 10 percent, effective until August 12, 2025, observing that these discussions were "a significant step by [China] toward remedying non-reciprocal trade arrangements and addressing the concerns of the United States relating to economic and

national security matters." Executive Order No. 14298, *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21,831, 21,831-32 (May 12, 2025). On July 7, 2025, the President paused enforcement of all Reciprocal Tariffs until August 1, 2025. Executive Order No. 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823, 30,823 (July 7, 2025). On July 31, 2025, the President again paused enforcement of the Reciprocal Tariffs for seven days. Executive Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963, 37,963-64 (July 31, 2025). The Reciprocal Tariffs (other than for China) took effect on August 7, 2025.

23. Plaintiff challenges all the Executive Orders identified in the above paragraphs ("Challenged Executive Orders"), each of which Supreme Court held unlawful in *Learning Resources*.

24. Furthermore, after the Supreme Court set aside the Challenged Executive Orders, the President and CBP refused to refund refused to refund billons of dollars in IEEPA Duties that CBP has collected since February 2025.

25. In *Executive Order 14389, Ending Certain Tariff Actions*, 91 Fed. Reg. 9,437 (Feb. 25, 2026), the President directed that the Challenged Executive Orders "shall no longer be in effect and, as soon as practicable, shall no longer be collected."

26. In implementing *Executive Order 14389* through Cargo Systems Messaging Service Message # 6783431, *Ending Collection of International Emergency Economic Powers Act Duties*, CBP stated that "[d]uties imposed pursuant to IEEPA . . . will no longer be in effect and will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026."

27. After *Executive Order 14389*, government officials asserted that Defendants would refuse to refund IEEPA Duties deposited with CBP. Treasury Secretary Bessent stated that "[t]he Supreme Court remanded [refunds] down to a lower court, and, you know, we will follow what they say, but that could be weeks or months when we hear [from] them." https://www.cnn.com/2026/02/22/politics/video/treasury-secretary-scott-bessent-tariff-revenue-gorsuch-scotus-opinion-congress, last visited March 1, 2026. And the President said: "Wouldn't you think they would have put one sentence in there saying that [we] keep the money or don't keep the money? … I guess it has to get litigated for the next two years." https://www.nytimes.com/2026/02/20/business/supreme-court-tariffs-refunds.html, last visited March 1, 2026.

28. Although senior government officials had contended that the United States would not comply with the Supreme Court's order by refunding all IEEPA Duties unlawfully collected, on April 20, 2026, relying upon its voluntary reliquidation authority under 19 U.S.C. § 1501, CBP elected to comply in part by launching the Consolidated Administration and Processing of Entries ("CAPE") functionality within the Automated Commercial Environment ("ACE"). Under CAPE, importers or filing brokers could submit declarations to CBP seeking refunds of a subset of the IEEPA Duties previously paid.

29. In implementing CAPE, CBP excluded from refunds, among other things, all entries that had liquidated more than 80 days before the date of the importer's CAPE submission to the agency.

30. Plaintiff sought and received refunds of IEEPA Duties paid through CBP's CAPE system, but CBP denied its refund requests for entries that had liquidated more than 80 days before the date of Plaintiff's CAPE submission.

## DISCUSSION

### IEEPA Does Not Authorize the Imposition of Customs Duties

31. IEEPA does not authorize the President to impose duties.

32. IEEPA limits the President's powers to **(A)** the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities," 50 U.S.C. § 1702 (a)(1)(A); **(B)** control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to jurisdiction of the United States; 50 U.S.C. § 1702(a)(1)(B); and **(C)** only if the United States is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to jurisdiction of the United States. 50 U.S.C. § 1702(a)(1)(C). IEEPA confers no other power.

33. IEEPA does not use the word "tariff" or any similar term in setting forth the powers that Congress delegated to the President under its Article I authority.

34. Given the statute's plain language, the Federal Circuit, sitting *en banc*, explained that "the Trafficking and Reciprocal Tariffs imposed by the Challenged Executive Orders exceed the authority delegated to the President by IEEPA's text." *V.O.S. Selections*, 149 F.4th at 1340. And as a result, the Trafficking and Reciprocal Tariffs are "'invalid as contrary to law.'" *Id*. (quoting *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383-84 (Ct. Int'l Trade 2025)).

35. The Supreme Court affirmed, explaining that "the terms of IEEPA do not authorize tariffs." *Learning Res*., 146 S.Ct. at 646.

**Imposition of Tariffs under IEEPA is an**
**Unconstitutional Delegation of Congressional Power**

36. The United States Constitution provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id*., cl. 3 ("Commerce Clause"). The Constitution grants this power exclusively to Congress and thus withheld it from the President. U.S. CONST. art. I, § 1.

37. Although, under some circumstances, Congress may delegate authority to the President to impose duties on imports, any such delegation under IEEPA would be an unconstitutional delegation of congressional authority.

38. To the extent it is ever permissible under the Constitution for Congress to delegate any part of its Article I powers to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See generally Fed. Commc'ns Comm'n v. Consumers' Rsch*., 145 S. Ct. 2482 (2025).

39. IEEPA provides absolutely no intelligible principle for the President to follow and thus, if interpreted to encompass the collection of duties, IEEPA would not provide even the flimsiest of guardrails preventing the President from appropriating all of Congress's Article I powers to impose tariffs.

**Defendants are Unlawfully Refusing to Refund Illegally Exacted IEEPA Tariffs**

40. Since the Supreme Court's decision, Defendants have ceased collecting deposits of IEEPA duties on entries of merchandise made on or after February 24, 2026. However, they have unlawfully refused to refund certain IEEPA Duties through CBP's CAPE system.

41. The Supreme Court directed that "the terms of IEEPA do not authorize tariffs." *Learning Res*., 146 S.Ct. at 646. Accordingly, continued retention of IEEPA Duties falls

outside the President's delegated authority and misconstrues IEEPA. *Motions Systems Corp. v. Bush*, 437 F.3d 1356, 1364 (Fed. Cir. 2006) (*en banc*).

42. And collection of IEEPA Duties has been unlawful since that statute's enactment. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *United States v. Security Industrial Bank*, 459 U.S. 70, 79 (1982); s*ee also Kuhn v. Fairmont Coal Co*., 215 U.S. 349, 372 (1910) (Holmes, J., dissenting) ("Judicial decisions have had retrospective operation for near a thousand years").

43. In sum, the collection of duties under authority of IEEPA was void *ab initio* and the Court should order CBP to refund all IEEPA Duties collected from Plaintiff with interest as provided by law.

**COUNT I –LIQUIDATION OR**
**RELIQUIDATION FREE OF IEEPA DUTIES**

44. Plaintiff incorporates paragraphs 1-43 above by reference as though set out in full.

45. Defendants' collection and continued retention of IEEPA Duties is unlawful because the President exceeded his statutory authority in issuing the Challenged Executive Orders imposing tariffs on entries of merchandise.

46. Plaintiff respectfully requests that the Court apply its precedent and the controlling Supreme Court and Federal Circuit precedent to declare the Challenged Executive Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, order reliquidation or liquidation of all of Plaintiff's entries of merchandise for which they have not received refunds of IEEPA Duties, and refund all such IEEPA Duties collected from Plaintiff, with interest as provided by law.

## COUNT II – DECLARATORY RELIEF

47. Plaintiff incorporates paragraphs 1-46 above by reference as though set out in full.

48. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

49. Plaintiff's claims present actual controversies as to the President's statutory authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

50. Plaintiff is an importer of record and has suffered injury by the requirement that they pay IEEPA Duties because of the unlawful Challenged Executive Orders.

51. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that Defendants lack authority to retain any IEEPA duties collected from Plaintiff in accordance with the Challenged Executive Orders.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

(a) declare that the United States lacks authority under IEEPA to set tariffs by executive action;

(b) declare that the Challenged Executive Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

(c) declare that, with respect to Plaintiff, CBP lacks authority to liquidate entries with the assessment of any of the Challenged Executive Orders or to retain any duties set out in the HTSUS that are based on the Challenged Executive Orders;

(d) with respect to Plaintiff, enjoin Defendants from imposing and enforcing any duties set out in the HTSUS that are based on the Challenged Executive Orders;

(e) order the United States to refund to Plaintiff all IEEPA Duties collected on merchandise imported by Plaintiff, with interest as provided by law;

(f) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

(g) grant such further relief as this Court deems proper.

Date: September 4, 2026

Respectfully submitted,

/s/ Stephen C. Tosini________
Law Office of Stephen Tosini
1717 K St. N.W., Rm. 900
Washington, DC 20006
Tel.: (202) 893-0496
E-mail: stephen.tosini@importdefense.com
*Counsel for Plaintiff*

/s/ Peter Quinter
Gunster, Yoakley & Stewart, P.A
600 Brickell Avenue, Suite 3500
Miami, FL 33131
tel.: (305) 376-6016
email: pquinter@gunster.com
*Counsel for Plaintiff*